UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| K.O. and E.O., Jr., by and through their parents and next friends, E.O. and L.J.; and C.J. by and through his father and next friend F.C.; each individually and on behalf of all others similarly situated | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 20-12015-TSH |
| v. | ) ) ) | |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) ) ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION
TO TRANSFER THIS ACTION TO THE WESTERN DISTRICT OF TEXAS,
OR ALTERNATIVELY
TO DISMISS PLAINTIFFS' COMPLAINT**

Defendant United States of America, by and through its attorney, Rachael S. Rollins, United States Attorney for the District of Massachusetts, respectfully moves to transfer this action to the Western District of Texas, or in the alternative, to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction the Class Action Complaint and Jury Demand ("Complaint") (ECF No. 1) filed by Plaintiffs K.O. and E.O., Jr., by and through their parents and next friends, E.O. and L.J., and C.J., by and through his father and next friend, F.C., each individually and on behalf of all others similarly situated (together, "Plaintiffs"). As set forth in this memorandum of law, and as summarized below, this case should be litigated in the Western District of Texas, where most of the alleged acts complained of occurred. In the alternative, the case should be dismissed as jurisdictionally barred because Congress has not waived sovereign immunity for the type of claims asserted in this action.

## I.  OVERVIEW

This is an action brought under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.,* by minors K.O. and E.O., Jr., by and through their parents and next friends, E.O. and L.J., and minor C.J., by and through his father and next friend, F.C., individually and on behalf of all others similarly situated. In 2018, Plaintiffs and their parents unlawfully entered the United States. The parents were detained for criminal proceedings related to their unlawful entry and separated from their children. Plaintiffs seek monetary damages for injuries allegedly caused by (1) Defendant's implementation of policies to refer for prosecution and to prosecute all individuals suspected of illegally entering the United States at the United States-Mexico border, including parents with children ("Zero-Tolerance Policy"), and (2) the conditions of confinement and treatment of Plaintiffs after they were separated. Additionally, Plaintiffs are attempting to bring this case as a purported class of "minor children nationwide who: enter or have entered the United States at or between designated ports of entry; have been or will be separated from a parent or parents by" the United States Department of Homeland Security ("DHS") or its sub-agencies U.S. Customs and Border Protection ("CBP"), U.S. Immigration and Customs Enforcement ("ICE") and United States Citizenship and Immigration Services ("USCIS"); and sent to the Department of Health and Human Services' ("HHS") Office of Refugee and Resettlement's ("ORR") custody, "ORR foster care, or CBP or ICE custody without a demonstration in a hearing that the parent is unfit or presents a danger to the child." Complaint ¶ 192. Plaintiffs assert eight causes of action under Texas law for intentional infliction of emotional distress, negligent infliction of emotional distress, false imprisonment, false arrest, assault and battery, negligent supervision, tortious interference with parent-child relationship and loss of parental consortium arising out of Plaintiffs' separation after crossing into the United States. *See* Complaint, ECF No. 1, ¶¶ 202-242.

2

The United States has denounced the prior practice of separating children from their families at the United States-Mexico border for the sole purpose of prosecution under 8 U.S.C § 1325 and "condemn[ed] the human tragedy" that occurred because of the Zero-Tolerance Policy. *Establishment of Interagency Task Force on the Reunification of Families*, Exec. Order 14011, § 1, 86 Fed. Reg. 8273, 8273 (Feb. 5, 2021). The Biden Administration has committed the federal government to "protect family unity and ensure that children entering the United States are not separated from their families, except in the most extreme circumstances where a separation is clearly necessary for the safety and well-being of the child or is required by law." *Id.*

That said, the Court should not reach the merits of Plaintiffs' FTCA claims. The Western District of Texas—where most of the alleged actions took place—is the most appropriate forum for this litigation, and the Court should transfer this action to that District pursuant to 28 U.S.C. § 1404(a). Alternatively, the Court should dismiss this case because Plaintiffs' alleged injuries are not compensable under the FTCA, as Congress has not waived the federal government's sovereign immunity for claims for money damages in these circumstances. Although the United States recognizes that district courts adjudicating FTCA claims arising out of the Zero-Tolerance Policy have, to date, reached differing conclusions on the threshold jurisdictional arguments presented in this motion to dismiss, the United States respectfully submits that on the better reading of the law, Congress has not waived sovereign immunity and Plaintiffs may not recover under the FTCA.

## II.    FACTUAL AND LEGAL BACKGROUND.

### A.    Statutory Framework for Noncitizens Entering the Country.[1]

Noncitizens who arrive in the United States, including those who arrive between ports of entry, are considered "applicant[s] for admission" and are "inspected by immigration officers" to determine their admissibility to the United States. 8 U.S.C. §§ 1225(a)(1), (a)(3), (b). When a noncitizen enters the United States between official ports of entry, he or she may be prosecuted for criminal immigration violations, including entering the United States "at any time or place other than as designated by immigration officers" and eluding "examination or inspection by immigration officers." 8 U.S.C § 1325(a). Section 1325(a) sets out a misdemeanor that is punishable by a fine and "imprison[ment] not more than 6 months" for a first infraction. *Id.* A subsequent violation may result in imprisonment of not more than two years. *Id.* Reentering the United States without authorization after having been previously removed is a felony. 8 U.S.C. § 1326. A noncitizen who reenters the United States without authorization after having been removed "shall be fined under title 18, or imprisoned not more than 2 years, or both." *Id.* § 1326(a).

Individuals arriving in or present in the United States who are deemed inadmissible are subject to removal from the United States and, as appropriate, detention pending such removal. *See id.* §§ 1225(b); 1226; 1357. These provisions generally apply to both adults and their accompanying children. The federal government possesses statutory authority to "arrange for appropriate places of detention for noncitizens detained pending removal or a decision on

---

[1] This brief uses the term "noncitizen" as equivalent to the statutory term "alien." *See Barton v. Barr*, 140 S. Ct. 1442, 1446 n.2 (2020) (quoting 8 U.S.C. § 1101(a)(3)).

4

removal." *Id.* § 1231(g)(1). In some cases, DHS may exercise its discretion to release a noncitizen from custody pending a decision on removal. *See, e.g.*, 8 U.S.C. §§ 1182(d)(5), 1226(a)(2).

**B.    Statutory Framework for Immigration Custody Relating to Unaccompanied Minors.**

Federal immigration law authorizes the United States to provide for the custody and care of unaccompanied minor children who are present in the United States without lawful immigration status. Specifically, HHS's ORR is charged with "the care and placement of unaccompanied alien children who are in federal custody by reason of their immigration status." 6 U.S.C. §§ 279(a), (b)(1)(A), (b)(1)(C); *see also* 8 U.S.C. § 1232(b)(1). The term "unaccompanied alien child" or "UAC" is defined as a child who: (1) "has no lawful immigration status in the United States"; (2) "has not attained 18 years of age"; and (3) "with respect to whom … there is no parent or legal guardian in the United States [or] no parent or legal guardian in the United States is available to provide care and physical custody." 6 U.S.C. § 279(g)(2).

Under the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), "[e]xcept in the case of exceptional circumstances, any department or agency … shall transfer the custody of such child to [ORR] not later than 72 hours after determining that such child is an unaccompanied alien child." 8 U.S.C. § 1232(b)(3). ORR seeks to place UACs "in the least restrictive setting that is in the best interest of the child." *Id.* § 1232(c)(2)(A). However, ORR "shall not release such children upon their own recognizance." 6 U.S.C. § 279(2)(B). Rather, once in ORR custody, there are detailed statutory and regulatory provisions that must be followed before the child is released to an approved sponsor. *See* 8 U.S.C. § 1232(c)(3). Congress requires that "an unaccompanied alien child may not be placed with a person … unless the Secretary of Health and Human Services makes a determination that the proposed custodian is capable of providing for the child's physical and mental well-being" and that "[s]uch determination shall, at

a minimum, include verification of the custodian's identity and relationship to the child, if any, as well as an independent finding that the individual has not engaged in any activity that would indicate a potential risk to the child." *Id.* § 1232(c)(3)(A). In some instances, a home study is required. *Id.* § 1232(c)(3)(B).

### C.     *Flores* Agreement Requirements.

In 1996, the Federal Government entered into a settlement agreement referred to as the "*Flores* Agreement." *See, e.g., Flores v. Sessions*, No. 85-cv-4544 (C.D. Cal. Feb. 2, 2015) (ECF No. 101). The *Flores* Agreement "sets out nationwide policy for the detention, release, and treatment of minors in the custody of the [immigration authorities]." *Flores v. Lynch*, 828 F.3d 898, 901 (9th Cir. 2016) (citing *Flores* Agreement ¶ 9). According to the Ninth Circuit, the *Flores* Agreement "unambiguously" applies both to unaccompanied minors and to minors who are encountered together with their parents or legal guardians. *Id.* at 901. Under the *Flores* Agreement, the government must expeditiously transfer any minor who cannot be released from custody to a non-secure, licensed facility. *Id.* at 902-03 (quoting *Flores* Agreement ¶ 12). The government must also "make and record the prompt and continuous efforts on its part toward … release of the minor." *Flores v. Rosen*, 984 F.3d 720, 738 (9th Cir. 2020) (quoting *Flores* Agreement ¶ 14).

Notably, the *Flores* Agreement applies only to minors. *Flores*, 828 F.3d at 901. It "does not address … the housing of family units and the scope of parental rights for adults apprehended with their children" and it "does not contemplate releasing a child to a parent who remains in custody, because that would not be a 'release.'" *Flores*, 828 F.3d at 906; *see also United States v. Dominguez-Portillo*, No. 17-MJ-4409, 2018 WL 315759, at *9 (W.D. Tex. Jan. 5, 2018) ("[*Flores*] does not provide that parents are entitled to care for their children if they were simultaneously arrested by immigration authorities[.]"). Nor does the *Flores* Agreement provide any rights to adult

6

detainees, including any rights of release. *Flores*, 828 F.3d at 908; *see also Dominguez-Portillo*, 2018 WL 315759, at \*14-15; *Bunikyte v. Chertoff*, No. 07-164, 2007 WL 1074070, at \*16 (W.D. Tex. Apr. 9, 2007). Though the *Flores* Agreement gives preference to release of minors to a parent, this preference "does not mean that the government must also make a parent available; it simply means that, if available, a parent is the first choice." *Flores*, 828 F.3d at 908.

### D.   Executive Branch Directives Regarding Immigration Enforcement.

During the time period relevant to this action, the Executive Branch issued several directives regarding enforcement of federal immigration laws. First, Executive Order 13767 (EO 13767) was issued in January 2017. *See* § 1, 82 Fed. Reg. 8793 (Jan. 30, 2017). The EO stated that "[i]t is the policy of the executive branch to … detain individuals apprehended on suspicion of violating Federal or State law, including Federal immigration law, pending further proceedings regarding those violations[.]" *Id.* § 2(b). Executive Order 13767 directed DHS to "ensure the detention of aliens apprehended for violations of immigration law pending the outcome of their removal proceedings or their removal from the country to the extent permitted by law," *id.* § 6, and to exercise its parole authority "only on a case-by-case basis in accordance with the plain language of the statute, and in all circumstances only when an individual demonstrates urgent humanitarian reasons or a significant public benefit derived from such parole," *id.* § 11(d).

Second, on April 11, 2017, the Department of Justice ("DOJ") issued guidance to all federal prosecutors regarding a renewed commitment to criminal immigration enforcement and directed that federal law enforcement prioritize the prosecution of several immigration offenses, including illegal entry under 8 U.S.C. § 1325. *See* U.S. DOJ Memorandum on Renewed Commitment to Criminal Immigration Enforcement (April 11, 2017), available at https://www.justice.gov/opa/press-release/file/956841/download.

Third, on April 6, 2018, DOJ issued a "Memorandum for Federal Prosecutors along the Southwest Border" on "Zero-Tolerance for Offenses Under 8 U.S.C. § 1325(a). U.S. DOJ

Memorandum on Zero-Tolerance for Offenses Under 8 U.S.C. § 1325(a), (April 6, 2018), available at https://www.justice.gov/opa/press-release/file/1049751/download. The memorandum directed federal prosecutors along the Southwest border "to the extent practicable, and in consultation with DHS, to adopt immediately a zero-tolerance policy for all offenses referred for prosecution under section 1325(a)." *Id.* In addition, on May 4, 2018, the Secretary of Homeland Security directed officers and agents to ensure that all adults deemed prosecutable for improper entry in violation of 8 U.S.C. § 1325(a) are referred to DOJ for criminal prosecution. This initiative applied to all amenable adults, including parents or legal guardians traveling with their minor children. Consistent with Executive Order 13767 and the April 2018 Zero-Tolerance Memorandum, DHS began to refer for prosecution increased numbers of adults – including those traveling their with children – who unlawfully entered the United States along the Southwest border in violation of Section 1325. *See generally* Executive Order 13767. Minor children of those adults were transferred to ORR custody pursuant to the TVPRA.

### E.    Prosecution of L.J. and F.C.

#### 1.  Plaintiff Family 1: L.J., K.O., and E.O., Jr.

According to the Complaint, Plaintiffs K.O. and E.O., Jr. and their mother, L.J., illegally crossed the United States-Mexico border into Texas in violation of 8 U.S.C. § 1325 on May 19, 2018. Compl. ¶ 125. K.O. was nine years old and E.O., Jr., was seventeen years old at the time of the crossing. *Id.* ¶ 126. After crossing into the United States, K.O., E.O., Jr., and L.J. were approached by an unidentified U.S. Border Patrol agent and detained. *Id.* ¶¶ 127–30. L.J. was charged with violating 8 U.S.C. § 1325(a). *Id.* ¶ 42. L.J. was separated from K.O. and E.O., Jr., and transferred to criminal custody for her criminal proceedings. *Id.*

As L.J. would no longer be available to provide care and physical custody of her children, K.O. and E.O., Jr. were designated unaccompanied minors and transferred to the custody of ORR

pursuant to the TVPRA. *Id.* ¶¶ 153-157. K.O. was placed with a foster family in Michigan, and E.O., Jr. was housed at an ORR facility with other boys in Michigan. *Id.* ¶ 156-157.

L.J. pleaded guilty and was sentenced to time served. *Id.* She was then detained in a secure adult immigration detention facility in Texas. *Id.* ¶ 162. On June 19, 2018, K.O. and E.O., Jr. were reunited with their father, who was living in Massachusetts. *Id.* ¶ 161. L.J. passed a credible fear screening and was released from custody and reunited with her family in Massachusetts on June 26, 2018. *Id.* ¶¶ 163-164; *see also id.* ¶ 11.

### 2. Plaintiff Family 2: F.C. and C.J.

Plaintiff C.J. and his father, F.C., illegally entered the United States, in El Paso, Texas, on June 17, 2018. *Id.* ¶ 168. C.J. was eleven years old at the time. *Id.* After crossing into the United States, C.J. and F.C. approached a U.S. Border Patrol vehicle and were detained. *Id.* ¶¶ 169. C.J. and F.C. were detained together until June 20, 2018, when F.C. was taken to court to face federal criminal charges. *Id.* ¶¶ 170-173. As F.C. would no longer be available to provide care and physical custody of C.J., C.J. was designated as an unaccompanied child and transferred to the custody of ORR pursuant to the TVPRA. *Id.* ¶¶ 183-185. After F.C.'s criminal proceedings, he was held in secure adult immigration detention. *Id.* ¶¶ 179, 182. On July 26, 2018, F.C. and C.J. were reunited in Texas. *Id.* ¶ 186. F.C. and C.J. now reside in Massachusetts. *Id.* ¶ 13.

### F.    Plaintiffs' Complaint.

Plaintiffs bring this action against the United States under the FTCA, 28 U.S.C. §§ 1346(b)(1), 2671-2680, seeking damages relating to intentional infliction of emotional distress (Count 1), negligent infliction of emotional distress (Count 2), false imprisonment (Count 3), false arrest (Count 4), assault and battery (Count 5), negligent supervision (Count 6), tortious interference with parent-child relationship (Count 7) and loss of parental consortium (Count 8).

ECF No. 1 ¶¶ 202-242. Plaintiffs allege these harms stemmed from (1) the referrals of L.J. and F.C. for prosecution under the Zero-Tolerance Policy, which resulted in their separation from their children, and (2) the conditions of confinement and treatment of Plaintiffs.

### G.     Subsequent Policy Changes.

After assuming office, President Biden took action to repudiate the policies that led to Plaintiffs' separation and to reunify the families that were affected by those policies. On February 2, 2021, the President issued an Executive Order that condemned the "human tragedy" of the prior Administration's Zero-Tolerance Policy, and that committed the United States government to "protect family unity and ensure that children entering the United States are not separated from their families, except in the most extreme circumstances where a separation is clearly necessary for the safety and well-being of the child or is required by law." Family Reunification Task Force EO 14011, § 1, 86 Fed. Reg. 8273, 8273. That Order created a Task Force to identify and reunify families separated under the Zero-Tolerance Policy, and to make recommendations for the potential provision of immigration benefits and mental-health services to those separated families. *Id.* § 4; *see also* Interim Progress Report, Interagency Task Force on the Reunification of Families, Nov. 29, 2021.[2]

---

[2]Available at https://www.dhs.gov/sites/default/files/publications/21_1129_s1_interim-progress-report-family-reunification-task-force.pdf.

### III.   LEGAL STANDARD.

#### A.   Transfer Under 28 U.S.C. § 1404(a).

The FTCA provides an avenue for individuals to sue the federal government for conduct that constitutes a tort under state law. The applicable substantive state law is "the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Venue for an FTCA claim is governed by 28 U.S.C. § 1402(b), which permits such a claim to be prosecuted "in the judicial district where the claimant resides or where the act or omission occurred." 28 U.S.C. § 1402(b).

However, section 1404(a) of Title 28 of the United State Code provides for transfer to another district court:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a); *see also Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western District of Texas*, 571 U.S. 49, 62-63 (2013). In addition to the convenience of the parties and witnesses, factors that courts in this Circuit consider include: ease of access to sources of proof and the availability of documents; the possibility of consolidation; and public interest factors such as the interest of a state to resolve litigation related to its laws, the familiarity of the court with applicable laws, and the congestions of both proposed courts. *Coady v. Ashcraft & Gerel*, 223 F.3d 1, 11 (1st Cir. 2000); *Bowen v. Elanes New Hampshire Holdings, LLC*, 166 F. Supp. 3d 104, 107 (D. Mass. 2015).

#### B.   Dismissal for Lack of Subject Matter Jurisdiction.

A defendant may move to dismiss a complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Courts must consider the threshold issue of jurisdiction before addressing the merits of a case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). Plaintiffs bear the burden of establishing jurisdiction because, by filing a complaint in

11

federal court, they seek to invoke it. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

A Rule 12(b)(1) jurisdictional attack may be facial or factual. *Torres-Negron v. J & N Recs., LLC*, 504 F.3d 151, 162 (1st Cir. 2007). The Court may dismiss an action under Rule 12(b)(1) if the complaint does not allege facts sufficient to establish subject matter jurisdiction on its face. *Id.* "It is the plaintiff's burden to prove the existence of subject matter jurisdiction." *Aversa v. United States*, 99 F.3d 1200, 1209 (1st Cir. 1996). Because "[f]ederal courts … have only that power that is authorized by Article III of the Constitution and the statutes enacted by Congress" (*Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986) (citation omitted)), the Court presumes the action lies outside its limited jurisdiction, and the burden is on the party asserting jurisdiction to establish that it exists. *Kokkonen,* 511 U.S. at 377.

A district court cannot hear a suit against the United States unless the government has waived sovereign immunity. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). "Sovereign immunity is jurisdictional in nature," meaning that a party's failure to establish a waiver of sovereign immunity is properly resolved on a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *Id.* at 475.

## IV.   THE COURT SHOULD TRANSFER THIS ACTION TO THE WESTERN DISTRICT OF TEXAS.

The United States moves to transfer this case to the Western District of Texas "[f]or the convenience of parties and witnesses, [and] in the interest of justice." 28 U.S.C. § 1404(a). Both steps of the Section 1404(a) analysis are satisfied because (1) the Western District of Texas is the appropriate forum for this dispute and (2) the balance of relevant factors favors litigating this action in that venue. Accordingly, this Court need not consider the merits of Plaintiffs' allegations, and should instead transfer the case to the Western District of Texas.

12

A.      **Venue Is Proper in the Western District of Texas.**

Section 1404(a) permits transfer to any district where the case "might have been brought."

28 U.S.C. § 1404(a). Pursuant to 28 U.S.C. § 1402(b), venue is proper in the Western District of

Texas, where the majority of the allegedly tortious acts or omissions occurred. *See, e.g., Barroca*

*v. United States*, No. 19-cv-00699-MMC, 2019 WL 5722383, *3 (N.D. Cal. Nov. 5, 2019)

(granting motion to transfer venue under § 1404(a) in FTCA case where majority of allegations in

plaintiff's complaint occurred in the transferee state); *Koval v. United States*, No. 2:13-CV-1630-

HRH, 2013 WL 6385595, *4 (D. Ariz. Dec. 6, 2013) (granting motion to transfer from District of

Arizona to Eastern District of California where "[t]he only connection that this case has to Arizona

is that plaintiff happened to move there sometime after the events upon which his claims are based

occurred"); *see also* Part IV.A.2, *infra*.

B.      **The Balance of Relevant Factors Strongly Favors Transfer to the Western District of Texas.**

Because the majority of the allegedly tortious acts or omissions occurred the Western District

of Texas, the convenience of the parties and witnesses, the ease of access to sources of proof, and

the availability of documents substantially favor transfer to the Western District of Texas.

Plaintiffs' Complaint underscores that this is a case in which the majority of the allegedly tortious acts

or omissions occurred in Texas. In particular, the Western District of Texas is where each parent and

their children illegally entered the United States. ECF No. 1 ¶¶ 125, 168. The Western District of Texas

is also the state where each parent and their children were apprehended, detained after unlawful entry,

and separated from each other. *Id.* ¶¶ 128-140, 162, 169-173, 186.

Other than the Plaintiffs, who currently reside in this District, most of the anticipated witnesses

are located outside this District – indeed, many of them presumably in the Western District of Texas.

While the Complaint does not name any individual agents or officers, it repeatedly alleges improper

13

conduct by many different government officials in connection with the arrests of L.J. and F.C., their separation from their children, and Plaintiffs' detention. However, none of this conduct took place in this District or the State of Massachusetts. Similarly, other sources of evidence and relevant documents are likely to be found predominantly in the Western District of Texas.

The possibility of consolidation also weighs in favor of transfer. There are similar FTCA cases pending in the Western District of Texas or with pending motions to transfer to the Western District of Texas. *See C.M.-D.V. v. United States*, No. 5:21-cv-00234 (W.D. Tex.); *C.D.A. v. United States*, No. 5:21-cv-00469-EGS (E.D. Pa.) (pending motion to transfer to W.D. Tex.). Accordingly, transferring this case to that forum could lead to efficiencies such as possible consolidation.

Moreover, the public interest factors also weigh in favor of transfer. The Western District of Texas has greater local interest in this matter. Plaintiffs' allegations focus significantly on the behavior of government agents operating in Texas and the conditions of facilities therein. *See* 15 Wright, Miller & Cooper, Federal Practice and Procedure 2d § 3854 (2018) ("An additional reason for litigating in the forum that encompasses the locus of operative facts is the local interest in having local controversies resolved at home...."). Additionally, the claims would likely be governed by Texas law, and thus the Western District of Texas would be the court with greater familiarity with applicable law.

On balance, these factors weigh in favor of transfer. Therefore, Defendant requests that the Court transfer this matter to the Western District of Texas.

## V.   PLAINTIFFS' CLAIMS ARE JURISDICTIONALLY BARRED.

For the reasons set forth below, Plaintiffs' claims should be dismissed for lack of jurisdiction and failure to state a claim. The government does not defend the merits of the

policies at issue in this case, which have now been repudiated. Indeed, President Biden has condemned the "human tragedy" that resulted from the Zero-Tolerance Policy and committed not to repeat it. Family Reunification Task Force EO § 1. But this case does not concern the wisdom of those now-revoked policies. Instead, it is a personal injury suit for damages under the FTCA. Plaintiffs cannot prevail on their FTCA claims because this Court lacks subject matter jurisdiction under established legal principles.[3]

### A.   The Claims Are Barred by the Discretionary Function Exception.
#### 1.  Legal Standard for Discretionary Function Exception.

The United States, as a sovereign entity, is immune from suit except insofar as it has specifically and expressly consented to be sued. *Lehman v. Nakshian*, 453 U.S. 156, 160-61 (1981) (quoting *United States v. Testan*, 424 U.S. 392, 399 (1976)). "[T]he terms of [the government's] consent to be sued in any court define that court's jurisdiction to entertain the suit." *Lehman*, 453 U.S. at 160 (internal quotes and citations omitted). Absent a specific, express waiver, sovereign immunity bars a suit against the government for lack of subject matter jurisdiction. *See FDIC v. Meyer*, 510 U.S. 471, 475-76 (1994).

The FTCA provides a limited waiver of sovereign immunity and allows individuals to sue

---

[3] Although Plaintiffs bring their claims on behalf of a putative class, no class has been certified. Accordingly, where Defendant refers to Plaintiffs herein, it refers to the individually identified Plaintiffs in this case and not any purported class of unidentified Plaintiffs. *See Lindsay v. GEICO*, 448 F.3d 416, 420 (D.C. Cir. 2006) (noting that "subject matter jurisdiction is a prerequisite to class certification" under Rule 23).

the United States when a federal employee's conduct, within the scope of his or her employment, causes "injury, loss of property, or personal injury or death." 28 U.S.C. § 1346(b)(1). However, the FTCA's waiver of sovereign immunity is subject to exceptions. *See* 28 U.S.C. § 2680.

When an exception applies, the United States retains its sovereign immunity, the court lacks jurisdiction, and the claim must be dismissed. *See Muniz-Rivera v. United States*, 326 F.3d 8, 12 (1st Cir. 2003). One such exception – the "discretionary function exception" ("DFE") – bars "[a]ny claim" that is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 8 U.S.C. § 2680(a); *see also Gaubert v. United States*, 499 U.S. 315, 325 (1991); *Berkovitz v. United States*, 486 U.S. 531, 536 (1988).

The Supreme Court has set forth a two-part test to determine if the DFE applies. *United States v. Gaubert*, 499 U.S. at 328-32. Courts must first ask whether the challenged conduct was in fact "discretionary in nature" – that is, whether the conduct involved "an element of judgment or choice.' *Berkovitz*, 486 U.S. at 536. The first prong is met unless "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Id.* at 536. Even if a regulation contains a mandate to do something, if that mandate involves judgment or choice, the discretion element is satisfied. *See GATX/Airlog Co. v. United States,* 286 F.3d 1168, 1174-75 (9th Cir. 2002). Further, where the policies that inform the conduct at issue allow the exercise of discretion, the defendant's acts or failures to act are presumed to be discretionary. *Lam v. United States*, 979 F.3d 665, 674 (9th Cir. 2020). Finally, the applicable policies and authorities must be considered in context – "the presence of a few, isolated provisions cast in mandatory language does not transform an otherwise suggestive set of guidelines into binding agency regulations." *Id.* at 677.

16

Second, if the conduct involves choice or discretion, courts must next determine whether the judgment of the government employee was "of the kind that the discretionary function exception was designed to shield." *Gaubert*, 499 U.S. at 322-23. Recognizing that tort actions challenging the government's discretionary policy judgments could "seriously handicap efficient government operations," Congress designed the DFE to "prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy" through a tort action. *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984). The focus of this inquiry is whether the "nature of the actions taken," pursuant to an exercise of discretion, "are susceptible to policy analysis." *Gaubert*, 499 U.S. at 325.

The government need not "prove that it considered these factors and made a conscious decision on the basis of them." *Kennewick Irr. Dist. v. United States,* 880 F.2d 1018, 1028 (9th Cir. 1989). Indeed, under the second prong, the government actors' subjective motive is immaterial because "the focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation" but rather "on the nature of the actions taken and on whether they are *susceptible* to policy analysis." *Gaubert,* 499 U.S. at 325 (emphasis added). Where the relevant policies provide for discretion, it must be presumed that the government's actions are grounded in policy when exercising that discretion. *Id.* at 324. And the statutory text confirms that the exception applies "whether or not the discretion involved [was] abused" by United States officials. 28 U.S.C. § 2680(a); *see also Reynolds v. United States*, 549 F.3d 1108, 1112 (7th Cir. 2008) (DFE applies where there are allegations of "malicious and bad faith conduct" because "subjective intent is irrelevant to our analysis").

If both prongs of the *Gaubert/Berkowitz* test are met, the DFE applies, the United States retains its sovereign immunity, the court lacks jurisdiction, and the claim must be dismissed. This

result applies even where the government may have been negligent in the performance of such discretionary acts, as "the presence or absence of negligence is irrelevant to the applicability of the discretionary function exception." *Evans v. United States*, 876 F.3d 375, 381 (1st Cir. 2017) As the legislative history of the FTCA explains, the statute's limited waiver of sovereign immunity was "not intended to authorize suit for damages to test the validity of or provide a remedy on account of such discretionary acts even though negligently performed and involving an abuse of discretion." H.R. Rep. No. 77-2245, 77th Cong., 2d Sess., at 10.

> **2. The Decisions to Refer for Prosecution and to Prosecute L.J. and F.C. Under the Zero-Tolerance Policy and then Detain them in Secure Adult Detention Facilities Pending Immigration Proceedings Are Discretionary in Nature.**

Plaintiffs' claims based on the government's decisions to refer L.J. and F.C. for prosecution for unlawful entry and to subsequently detain them pending their immigration proceedings, resulting in their separation from their children, are barred by the DFE because these decisions involved an element of judgment or choice and were susceptible to policy analysis. Plaintiffs do not contest that CBP lawfully apprehended them after they crossed the United States-Mexico border illegally. Nor do Plaintiffs contest that L.J. and F.C. were properly subject to prosecution. Moreover, Plaintiffs do not dispute that the government had discretion to detain L.J. and F.C. in connection with their criminal proceedings or to designate K.O., E.O., Jr., and C.J. unaccompanied children under the TVPRA.

These decisions, which together resulted in K.O., E.O., Jr., and C.J.'s placement in the care and custody of ORR, are quintessentially discretionary. As the Supreme Court has recognized, "[t]he Attorney General and United States Attorneys retain 'broad discretion' to enforce the Nation's criminal laws." *United States v. Armstrong*, 517 U.S. 456, 464 (1996). Indeed, "[t]he Supreme Court has long recognized that 'the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case.'" *In re Sealed Case*, 829 F.2d 50, 63

18

(D.C. Cir. 1987) (quoting *United States v. Nixon*, 418 U.S. 683, 693 (1974)); Thus, "[d]ecisions concerning when, whether and whom to prosecute have traditionally been considered discretionary and have been held to fall within the discretionary function exception of 28 U.S.C. § 2680(a)." *KW Thompson Tool v. United States*, 836 F.2d 721, 729 (1st Circ. 1988); *see also id.* ("All the components of the final determination—whether, when, whom and how—reflect the decision-maker's judgment of how best to enforce compliance and to deter misconduct in others. We would be engaging in judicial "second guessing," as well as trespassing upon an executive function, were we to interfere with the prosecutorial decision-making process.").

As other courts have recognized, the Zero-Tolerance Policy—which was subsequently revoked—"amounts to exercise of the prosecutorial discretion that Congress and the Constitution confer on the Attorney General." *Mejia-Mejia v. ICE*, No 18-1445 (PLF), 2019 WL 4707150, at *5 (D.D.C. Sept. 26, 2019); *see also Peña Arita v. United States*, 470 F. Supp. 3d 663 686-87 (S.D. Tex. 2020). The DFE bars the Court from "second-guessing" or inquiring into government actors' intent in exercising that prosecutorial discretion. *Berkovitz*, 486 U.S. at 536; *see also Lam*, 979 F.3d at 673 (citing *Varig*, 467 U.S. at 814). In determining the applicability of the DFE, the Court looks only at whether the conduct or decision at issue is "susceptible to policy analysis" from an objective perspective – subjective intent is not part of the analysis. *Gaubert*, 499 U.S. at 325. Here, however, the government's decisions were not merely "susceptible to" policy analysis, but the government spelled out the policies it sought to further through its enforcement efforts in a series of Executive Branch directives. Notwithstanding the merit of these prior policies, they were policy choices "susceptible to [objective] analysis," even as described by the Complaint. *See, e.g.*, ECF No. 1 ¶¶ 25, 43, 45. 66, 67, 69, 89, 91, 92,95, 97, 116.

Following their criminal proceedings, L.J. and F.C. were transferred to secure adult immigration detention facilities pending their immigration proceedings. The government's decisions concerning where to detain L.J. and F.C. pending their immigration proceedings were also discretionary and susceptible to policy analysis. Concerns about "subjecting the prosecutor's

motives and decision making to outside inquiry" are magnified in the immigration context. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 490 (1999). There, the federal government possesses the express statutory authority to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." 8 U.S.C. § 1231(g)(1).[4] "Congress has placed the responsibility of determining where aliens are detained within the discretion of the [Secretary]." *Comm. Of Cent. Am. Refugees v. I.N.S.*, 795 F.2d 1434, 1440 (9th Cir. 1986) (emphasis added); *see also Gandarillas-Zambrana v. BIA*, 44 F.3d 1251, 1256 (4th Cir. 1995) ("The INS necessarily has the authority to determine the location of detention of an alien in deportation proceedings … and therefore, to transfer aliens from one detention center to another."); *Sasso v. Milhollan*, 735 F. Supp. 1045, 1046 (S.D. Fla. 1990) (holding that the Attorney General has discretion over the location of detention); *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (holding that the "Attorney General's discretionary power to transfer aliens from one locale to another, as she deems appropriate, arises from" statute).

"Because the decision to detain an alien pending resolution of immigration proceedings is explicitly committed to the discretion of the Attorney General and implicates issues of foreign policy, it falls within this [FTCA] exception." *Mirmehdi v. United States*, 662 F.3d 1073, 1081-82 (9th Cir. 2011); *see also Cohen v. United States*, 151 F.3d 1338, 1342 (11th Cir. 1998) (decisions where to place prisoners are policy-based decisions protected by DFE); *Bailor v. Salvation Army*, 51 F.3d 678, 685 (7th Cir. 1995) (decisions whether to detain or release are policy-based decisions protected by DFE); *Lipsey v. United States*, 879 F.3d 249, 255 (7th Cir. 2018) (placement decisions

---

[4] Following the Homeland Security Act of 2002, many references in the INA to the "Attorney General" now mean the Secretary of Homeland Security. *See Clark v. Suarez Martinez*, 543 U.S. 371, 374 n.1 (2005).

are susceptible to policy analysis); *Santana-Rosa v. United States*, 335 F.3d 39, 44 (1st Cir. 2003) ("assignment to particular institutions or units . . . must be viewed as falling within the discretionary function exception to the FTCA").

This discretion necessarily entails decisions regarding where and with whom noncitizens are detained, including decisions regarding whether adults and minors can be detained in the same facility and whether to detain family members together. *See Peña Arita*, 470 F. Supp. 3d at 691-92 (decisions by DHS to separate family members are protected by the DFE). Although the *Flores* Agreement contains some requirements concerning the detention of minors, it does not specifically prescribe a course of action and thus does not remove the government's discretion. Moreover, the *Flores* Agreement does not require release of a parent or mandate that parents be housed with a child. *Flores*, 828 F.3d at 908; *see also Dominguez-Portillo*, 2018 WL 315759, at *14-15; *Bunikyte v. Chertoff*, No. 07-164, 2007 WL 1074070, at *16 (W.D. Tex. Apr. 9, 2007). In this case, none of the "mandatory" duties Plaintiffs allege government officials violated (*see* ECF No. 1 ¶¶ 24-28) prescribe a specific course of action to follow in connection with the prosecution and subsequent separate detention of the Plaintiff parents and children in this case. Instead, the challenged decisions were the result of the exercise of discretion. Accordingly, the exercise of the statutory authority regarding whether and where to detain L.J. and F.C. during and after their criminal proceedings is protected by the discretionary function exception.

For similar reasons, the decision to determine that K.O., E.O., Jr., and C.J. were "unaccompanied" within the meaning of the TVPRA is also a decision covered by the DFE. *See* 6 U.S.C. § 279(g)(2). Whether a parent is "available to provide care and physical custody" is a policy question vested in federal officials. *See D.B. v. Poston*, 119 F. Supp. 3d 472, 482-83 (E.D. Va. 2015) ("Federal agencies are afforded discretion under the statutory scheme when classifying juveniles as unaccompanied alien children."), *aff'd in part and vacated in part*, 826 F.3d 721 (4th Cir. 2016); *see also Baie v. Secretary of Def.*, 984 F.2d 1375, 1377 (9th Cir. 1986) ("[I]nterpretation of the statute is a plainly discretionary administrative act the 'nature and quality'

21

of which Congress intended to shield from liability under the FTCA."); *Medina v. United States*, 259 F.3d 220, 227 (4th Cir. 2001) (determining whether conduct constituted "crime of moral turpitude" under applicable statute was "a quintessential exercise of [agency's] broad discretion"). Here, L.J. and F.C. were referred for prosecution and transferred to criminal custody for their criminal proceedings, and subsequently transferred to secure adult ICE detention facilities pending the outcome of their immigration proceedings. In those circumstances, the DFE protects the officials' determination that K.O., E.O., Jr., and C.J. should have been deemed unaccompanied and thus transferred to the custody of ORR. *See Fisher Bros. Sales, Inc. v. United States*, 46 F.3d 279, 287 (3d Cir. 1995) (holding that a decision was protected by the DFE when it "necessarily reflects the decisionmaker's judgment that it is more desirable to make a decision based on the currently available information than to wait for more complete data or more confirmation of the existing data.").

In the end, Plaintiffs do not allege injury from any government action or decision that was not subject to discretion and susceptible to policy analysis. To the extent that Plaintiffs suggest that the government was required to release them into the interior, did not have the discretion to refer L.J. and F.C. for prosecution of criminal violations of immigration law or did not have discretionary authority to determine that K.O., E.O., Jr., and C.J. were unaccompanied, these decisions are quintessential discretionary policy judgments subject to the DFE.

### 3. Plaintiffs' Remaining Claims Concerning Their Conditions of Confinement Are Also Barred by the Discretionary Function Exception.

Plaintiffs also bring claims based on their conditions of confinement. Among other things, Plaintiffs allege that the CBP "room was freezing cold [and] the only food was sandwiches for the children." Compl. ¶ 134; *see also id.* ¶ 147, 171-72.

While the government is committed to the safe and humane treatment of every individual in detention, Plaintiffs' conditions-of-confinement claims are barred by the DFE. Courts have

22

repeatedly held that claims based on acts or omissions relating to "conditions of confinement" are barred by the DFE because the manner in which the government manages and operates its detention facilities involve discretionary decisions susceptible to policy considerations. *See, e.g., Bultema v. United States*, 359 F.3d 379, 384 (6th Cir. 2004) (decision not to provide bed rails susceptible to policy considerations); *Campos v. United States*, 888 F.3d 724, 733 (5th Cir. 2018) (deficiencies in computer database that failed to reveal immigration status protected by discretionary function exception); *Cosby v. Marshals Service*, 520 F. App'x 819, 821 (11th Cir. 2013) (detainee decisions involve "several policy considerations … including prison security, the allocation of finite resources, and the logistics of prisoner transportation if transfer to an off-site facility is an option"); *Patel v. United States*, 398 F. App'x 22, 29 (5th Cir. 2010) (DFE applied to decision to transfer prisoner); *Antonelli v. Crow*, No. 08-261, 2012 WL 4215024, at *3 (E.D. Ky. Sept. 19, 2012) (collecting cases in which myriad conditions of confinement claims, including claims based on temperature and crowding, barred by the DFE); *Lineberry v. United States*, No. 3:08-cv-0597, 2009 WL 763052, at *6 (N.D. Tex. Mar. 23, 2009) ("Plaintiff's allegation of negligent overcrowding falls within the discretionary function exception"); *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994*)* (detained individuals have "no right to unlimited telephone use" and a detainee's right to telephone access is "subject to rational limitations in the face of legitimate security interests"); *Harrison v. Fed. Bureau of Prisons*, 464 F. Supp. 2d 552, 559 (E.D. Va. 2006) ("[T]he BOP's provision of telephone services is a matter committed to its discretion that will not be second-guessed through an FTCA claim.").

In *Peña Arita*, 470 F. Supp. 3d 663, the court dismissed FTCA claims similarly arising from the Zero-Tolerance Policy. As here, the plaintiffs alleged that the practices at issue were unlawful and challenged various associated conditions of confinement. *Id.* at 686-87. In dismissing

the claims, the *Peña Arita* court agreed with the government that the "family separation policy itself and its implementation by officers in the field are discretionary." *Id.* at 687 ("prosecutorial judgment is a matter of choice, and obviously grounded in considerations of public policy – such as the United States Attorney General's priorities and United States Attorneys' discretion – that is intended to be shielded by the discretionary function exception."). The court concluded that the challenged decision-making was "'grounded in social, economic, and policy'" considerations that the court was "without jurisdiction to second-guess." *Id.* (quoting *Gaubert*, 499 U.S. at 323). The *Peña Arita* court held that, "to the extent Plaintiffs attempt to bring a constitutional tort claim against the United States under the Federal Tort Claims Act, or assert that the Constitution itself furnishes a nondiscretionary standard of care actionable under the FTCA in the event such care is not provided, such claim is entirely jurisdictionally barred." *Id.* at 688.

> **4. Plaintiffs' Assertion of Unconstitutional Conduct Does Not Preclude Application of the Discretionary Function Exception.**

Plaintiffs cannot avoid application of the DFE by alleging a violation of a constitutional right. Congress did not create the FTCA to address constitutional violations, but rather to address violations of state tort law committed by federal employees. *See Meyer*, 510 U.S. at 477 (recognizing that "§ 1346(b) does not provide a cause of action for" a "constitutional tort claim"). As noted, the Supreme Court has explained that, when "a federal statute, regulation, or policy *specifically prescribes* a course of action for an employee to follow," there is no further discretion to exercise. *Gaubert*, 499 U.S. at 322 (quoting *Berkovitz*, 486 U.S. at 536) (emphasis added). The Constitution is no different: in some cases, the Constitution may establish such a specific prescription that it removes an official's discretion, but the requirement of specificity applies with the same force whether the prescription is found in the Constitution or a statute.

The Supreme Court has long recognized that conduct may be discretionary even if it is later determined to have violated the Constitution. The common law doctrine of official immunity thus applies to the exercise of "discretionary functions" even when the conduct violates the Constitution, as long as the constitutional right was not defined sufficiently so that the official should have known the act was prohibited. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."); *see also, e.g.*, *Wilson v. Layne*, 526 U.S. 603, 614-615 (1999) (applying the "discretionary function[]" formulation and holding that officers were entitled to qualified immunity because, although their conduct violated the Fourth Amendment, the law was not clearly established at the time).

Thus, when the Supreme Court in *Berkovitz* held that a federal mandate must "specifically prescribe[]" conduct in order to overcome the discretionary function exception, it referred to official immunity precedent, underscoring that the two standards operate in tandem. 486 U.S. at 536 (citing *Westfall v. Erwin*, 484 U.S. 292, 296-297 (1988)). Accordingly, the discretionary function exception is not made inapplicable by every allegation of unlawful or unconstitutional conduct, but only by a showing that the government official's discretion was cabined by a specific, clearly established constitutional directive, accompanied by plausible assertions that the specific directive was violated. *See, e.g.*, *Bryan v. United States*, 913 F.3d 356, 364 (3d Cir. 2019) ("Because . . . the CBP officers did not violate clearly established constitutional rights, the FTCA claims also fail" under the discretionary function exception.); *Limone v. United States*, 579 F.3d 79, 102 (1st Cir. 2009) (declining to apply the discretionary function exception to conduct that the court had previously found "stated a clear violation of due process").

Indeed, even before it specifically addressed the qualified immunity standards applicable to federal employees, the Supreme Court in *Butz v. Economou*, 438 U.S. 478 (1978), explicitly recognized that the discretionary function exception would apply even if alleged conduct might later be held unconstitutional. The Court in that case held that officials sued for violations of constitutional rights were entitled to qualified, but not absolute immunity. The Court explained that were it otherwise, the recently recognized *Bivens* remedy would be illusory, and, as relevant here, it noted that "no compensation would be available from the Government, for the Tort Claims Act prohibits recovery for injuries stemming from discretionary acts, even when that discretion has been abused." *Id.* at 505. *Butz* and subsequent decisions thus leave no doubt that conduct that violates the Constitution may constitute the type of abuse of discretion that falls within the scope of the discretionary function exception.

For the reasons discussed, a court should require the same level of specificity that would be required in determining whether a statute left an employee with "no discretion to abuse." In any event, whatever the precise standard, it is not satisfied here. Plaintiffs have alleged actions of various kinds by various officials. Regardless of whether some or all of these acts reflected an abuse of discretion, Plaintiffs have identified nothing in the decisions of the Supreme Court or the First Circuit that removed any official's discretion with respect to any of the categories of asserted actions by "specifically prescribe[ing] a course of action for an employee to follow." *Gaubert*, 499 U.S. at 322. Indeed, as the Fourth Circuit observed, "we . . . have been unable to find a substantive due process right to family unity in the context of immigration detention pending removal." *Reyna as next friend of J.F.G. v. Hott*, 921 F.3d 204, 210-11 (4th Cir. 2019). And while some decisions have concluded that constitutional allegations made the exception inapplicable, none has analyzed the relevant standards set out in the Supreme Court's FTCA decisions and in its decisions involving

official immunity.[5] Those principles make clear that the discretionary function exception bars Plaintiffs' claims.

**B.    Plaintiffs' Claims Relating to Transfer K.O., E.O., Jr., and C.J. to the Custody of ORR is Barred by the FTCA's Exception For Actions Taken While Reasonably Executing Law.**

Plaintiffs' claims relating to the decision to transfer K.O., E.O., Jr., and C.J. to the custody of ORR are independently precluded because the FTCA prevents the United States from being held liable for "[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid." 28 U.S.C. § 2680(a). Thus, "[w]here government employees act pursuant to and in furtherance of regulations, resulting harm is not compensable under the act[.]" *Dupree v. United States*, 247 F.2d 819, 824 (3d Cir. 1957); *see also Accardi v. United States*, 435 F.2d 1239, 1241 (3d Cir. 1970) (claim based on "enforcement of 'rules and regulations'" barred by § 2680(a)).

This exception "bars tests by tort action of the legality of statutes and regulations." *Dalehite v. United States*, 346 U.S. 15, 33 (1953); *see also* H.R. Rep. No. 77-2245, 77th Cong., 2d Sess., at 10 (noting that it was not "desirable or intended that the constitutionality of legislation, or the legality of a rule or regulation should be tested through the medium of a damage suit for tort"); *Powell v. United States*, 233 F.2d 851, 855 (10th Cir. 1956) (FTCA does not waive sovereign immunity for claims based on employees' acts "performed under and in furtherance of the regulation … even though the regulation may be irregular or ineffective"). Thus, where a government employee's actions are authorized by statute or regulation – even if that statute or

---

[5] *A.P.F. v. United States*, 492 F. Supp. 3d 989, 996 (D. Ariz. 2020); *Nunez Euceda v. United States*, No. 2:20-cv-10793, 2021 WL 4895748, *3 (C.D. Cal. Apr. 27, 2021); *C.M. v. United States*, No. CV-19-5217, 2020 WL 1698191, *4 (D. Ariz. Mar. 30, 2020).

regulation is later found unconstitutional or invalid, the due care exception applies, and the claim must be dismissed for lack of subject matter jurisdiction. *See Borquez v. United States*, 773 F.2d 1050, 1053 (9th Cir. 1985); *Hydrogen Tech. Corp. v. United States*, 831 F.2d 1155, 1160-61 & n.5 (1st Cir. 1987) (exception barred claim of owner that FBI destroyed its prototype by dismantling it during criminal investigation conducted pursuant to 28 U.S.C. § 533, which authorizes Attorney General to appoint officials "to detect and prosecute crimes against United States").

Here, the United States is required to "transfer the custody" of children to the care of ORR "not later than 72 hours after" determining that there is no parent available to provide care and physical custody, absent exceptional circumstances. 8 U.S.C. § 1232(b)(3). In this case, the government made the determination that there were no parents available to provide care and physical custody for K.O. and E.O., Jr., and C.J. The government made the discretionary decisions to refer L.J. and F.C. for criminal prosecution and detain them in secure immigration detention facilities separate from their children. Once those protected discretionary determinations had been made, the TVPRA required that K.O., E.O., Jr., and C.J. be transferred to ORR custody. The enforcement of that statutory command cannot form the basis of an FTCA claim.[6]

---

[6] In reaching the contrary conclusion, district courts have stated that there is no statute or regulation "requiring the separation of Plaintiffs upon their entry into the country." *A.P.F.*, 492 F. Supp. 3d at 996; *see also C.M. v. United States*, No. CV-19-05217-PHX-SRB, 2020 WL 1698191, at *4 (D. Ariz. Mar. 30, 2020). But, as just described, federal law does require that children be placed into ORR custody if their parents are detained for prosecution. For the reasons described above, the decision to detain those parents for prosecution is quintessentially a discretionary one.

28

### C.    Plaintiffs' Claims Are Barred Because There Is No Private-Person Analogue.

The Plaintiffs' claims also fail because the government acts that Plaintiffs challenge have no private-person analogue. The FTCA's waiver of sovereign immunity is limited to "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The statute authorizes tort recovery against the United States only "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. The FTCA does not waive sovereign immunity for claims against the United States based on governmental "action of the type that private persons could not engage in and hence could not be liable for under local law." *Chen v. United States*, 854 F.2d 622, 626 (2d Cir. 1988) (internal quotes omitted).

The FTCA "requires a court to look to the state-law liability of private entities, not to that of public entities, when assessing liability under the FTCA." *United States v. Olson*, 546 U.S. 43, 45-46 (2005). Though the private analogue need not be exact, a plaintiff must offer "a persuasive analogy" showing that the government actor sued would be subject to liability under state law if it were a private person. *Westbay Steel, Inc. v. United States*, 970 F.2d 648, 650 (9th Cir. 1992).

Because only the federal government has the authority to enforce federal criminal and immigration laws and make detention determinations, there is no private-person analogue that would support a claim under the FTCA. The alleged harms here stem from the federal government's decision to enforce federal immigration laws, criminally prosecute certain individuals, and hold the Plaintiff parents in custody pending immigration proceedings or prosecution, resulting in the Plaintiff children's placement in the care and custody of ORR. The United States has not waived its sovereign immunity for such decisions to enforce federal law, as they have no private-person counterpart. *See, e.g., Air Shuttle Corp. v. United States*, 112 F.3d

532, 537 (1st Cir. 1997) (decision regarding whether to take enforcement action under federal law was not conduct for which private individual could be held liable and thus did not give rise to FTCA action); *Ryan v. U.S. Immigration & Customs Enf't*, 974 F.3d 9, 26 (1st Cir. 2020) ("Controlling immigration and the presence of noncitizens within the country are duties and powers vested exclusively in the sovereign.").

### D.    Plaintiffs' Claims Are Impermissible Direct Liability or Systemic Tort Claims.

The FTCA's limited waiver of sovereign immunity allows a plaintiff to sue the United States for damages arising from certain torts committed by federal employees acting within the scope of their employment. *Valdez v. United States*, 56 F.3d 1177, 1179 (9th Cir. 1995) (citing 28 U.S.C. § 1346(b)). As the Ninth Circuit has held, the terms "person" and "employee of the government," as used in the FTCA, mean individuals and natural persons, not institutions or corporate entities. *Adams v. United States*, 420 F.3d 1049, 1052-55 (9th Cir. 2005). Hence, a plaintiff cannot assert "systemic" claims or seek to hold the United States directly liable under the FTCA but must instead allege tortious conduct by individual federal employees, acting within the scope of their employment, for whom the United States has assumed liability under the FTCA. *See, e.g., Lee v. United States*, No. CV 19-08051-PCT-DLR (DMF), 2020 WL 6573258, at *6 (D. Ariz. Sept. 18, 2020) (applying *Adams* and dismissing claims of "generalized negligence" asserted against staff and employees of federal institutions "as a whole" for lack of jurisdiction).

Here, as in *Lee*, Plaintiffs seek to raise direct liability and institutional tort claims against the United States. Throughout the Complaint, Plaintiffs attribute the alleged tortious conduct to the government as a whole, referring throughout to "the United States government," "the U.S. government," and "the government," rather than specific tortious conduct on the part of specific federal employees for whom the United States must assume liability. *See, e.g.*, ECF No. 1 at ¶¶ 1,

5, 20, 61, 67, 212, 213, 216-219, 227-228, 231-234, 237-239; *id.* at 4:14-16, 11:12, 16:4, 20:11, 52:14-15. The FTCA's limited waiver of sovereign immunity does not encompass such "systemic," institutional tort claims or "generalized theories" of tortious conduct "asserted against the staff and employees of federal institutions as a whole." *Lee*, 2020 WL 6573258, at *6.

## VI.    CONCLUSION.

For the foregoing reasons, Defendant requests that this action be transferred to the Western District of Texas or, in the alternative, dismissed for lack of subject matter jurisdiction.

<div style="margin-left:40%">

RESPECTFULLY SUBMITTED

RACHAEL S. ROLLINS
United States Attorney

By:    */s/ Rayford A. Farquhar*
RAYFORD A. FARQUHAR
Assistant United States Attorneys
United States Attorney's Office
John Joseph Moakley U.S. Courthouse
One Courthouse Way - Suite 9200
Boston, MA 02210
(617) 748-3100
rayford.farquhar@usdoj.gov

</div>

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

<div style="margin-left:40%">

*/s/ Rayford A. Farquhar*
RAYFORD A. FARQUHAR
Assistant United States Attorneys

</div>

Dated: February 28, 2022