UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| K.O. et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | Civil Action No. 20-12015-TSH |

**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO TRANSFER THIS ACTION,
OR ALTERNATIVELY TO DISMISS PLAINTIFFS' AMENDED COMPLAINT:
LEAVE TO FILE GRANTED ON AUGUST 3, 2022**

**I.   THIS COURT SHOULD TRANSFER THIS ACTION TO THE WESTERN DISTRICT
OF TEXAS.**

Section 1404(a) authorizes a district court to transfer a pending action to "any other district
or division where it might have been brought" "[f]or the convenience of the parties and witnesses"
and "in the interest of justice." 28 U.S.C. § 1404(a).  Plaintiffs do not dispute that this action could
have been brought in the Western District of Texas.  The sole question for purposes of Defendant's
transfer motion is therefore "whether convenience and the interests of justice warrant transfer."
*Karmaloop, Inc. v. ODW Logistics, Inc.*, 931 F. Supp. 2d 288, 290 (D. Mass. 2013).  Defendant's
opening memorandum set forth several reasons why transferring this case would best serve
convenience and the public interest, and Plaintiffs' counterarguments are unavailing.

*First*, Plaintiffs assert that this Court must apply a "strong presumption" in favor of their
choice of forum.  *See* Opposition Brief (Opp. Br.) at 11, 14 (ECF No. 61).  But, as this Court has
explained, a plaintiff's choice of forum "is not a trump card for all plaintiffs opposing transfer."
*DSM Research, B.V. v. Verenium Corp.*, 686 F. Supp. 2d 159, 161 (D. Mass. 2010).  Instead, "the
weight accorded to a plaintiff's choice of forum varies with the circumstances of the case."

*Johnson v. New York Life Ins. Co.*, No. 12-cv-11026-MLW, 2013 WL 1003432, at *3 (D. Mass. Mar. 14, 2013).  To that end, this Court has routinely declined to afford meaningful weight to a plaintiff's choice of forum "where *the operative facts of the case* have no material connection with this district.'"  *U.S. ex rel. Ondis v. City of Woonsocket, Rhode Island*, 480 F. Supp. 2d 434, 436 (D. Mass. 2007) (emphasis added, citation omitted); *see also, e.g.*, *Rosenthal v. Unum Grp.*, No. 17- 40064-TSH, 2018 WL 1250483, at *1 (D. Mass. Mar. 12, 2018) ("when the plaintiff's choice of forum has little or no connection to the operative facts of the case . . . the court may afford less weight to their choice").  That is precisely the situation here.

There is no reasonable dispute that the operative facts of this matter concern Plaintiffs' unlawful entry into the country; Defendant's prosecution and detention of the plaintiff parents; Defendant's designation of the plaintiff children as unaccompanied minors; and the resulting separation of the plaintiff parents and the plaintiff children.  Yet, none of the Plaintiffs entered the country in Massachusetts.  None of the Plaintiffs were prosecuted or detained in Massachusetts. And none of the Plaintiffs were separated from one another in Massachusetts.  Because the operative facts of this case plainly did not occur in Massachusetts, this Court need not afford Plaintiffs' choice of forum much weight, if any.

That is especially true where, as here, the plaintiffs seek to represent a nationwide class. *See* Am. Compl. ¶ 198 (ECF No. 41).  Although Defendant disputes that certifying a class would be proper under the FTCA, the inquiry at this stage is whether transfer is warranted considering, among other factors, that Plaintiffs purport to bring a putative class action.  *See In re Warrick*, 70 F.3d 736, 741 n.7 (2d Cir. 1995) ("the plaintiff's choice of forum is a less significant consideration in a (here, putative) class action than in an individual action").  And as this Court has explained, "[a] plaintiff's choice of forum is less significant . . . in the context of class actions," *Johnson*,

2013 WL 1003432, at *3, particularly given that—in a purported nationwide class action—plaintiffs seek to represent the rights of others who are not residents of, or located in, the chosen forum. *See, e.g., Ridenti v. Google LLC*, 530 F. Supp. 3d 164, 168 (D. Mass. 2021) ("[plaintiff's] choice is accorded less weight here, wherein plaintiff asserts class claims in a second-filed putative class action"); 15 Charles Alan Wright, Arthur R. Miller, and Richard D. Freer, Federal Practice and Procedure § 3848 (4th ed. 2022) ("in representative actions, where the plaintiff seeks to vindicate rights of others the plaintiff's venue preference is weakened").

*Second*, Plaintiffs do not dispute that most of the events giving rise to their claims took place in Texas. Indeed, according to the Amended Complaint, the principal conduct at issue in this case—the separation of migrant families along the Texas border—allegedly began in the Western District of Texas. Am. Compl. ¶ 46. Plaintiffs also allege that the government arrested two of the plaintiff parents—L.J. and F.C.—and that L.J. was detained in the Western District of Texas. *Id.* ¶ 168. (Plaintiffs do not specify where F.C. was detained, though it would appear to have also been the Western District of Texas). And Plaintiffs claim that one of the two plaintiff families in this case—F.C. and his son, C.J.—crossed the border and were separated in the Western District of Texas. *Id.* ¶ 174. In arguing against transfer, Plaintiffs emphasize that members of the second plaintiff family—L.J. and her children, K.O. and E.O., Jr.—crossed the border and were separated in "in the *Southern* District of Texas." Opp. Br. at 11 (emphasis in original). But that argument only highlights the lack of any material connection to Massachusetts, and reinforces the benefits of transferring this action to Texas: Even if several non-party witnesses are in the Southern District of Texas (in addition to the Western District of Texas), transferring this action to the Western District of Texas plainly would be more convenient for those witnesses than if this matter stayed in Massachusetts. *See* Fed. R. Civ. P. 45(c)(1)(A)-(B).

*Third*, Plaintiffs claim that "Defendant fail[ed] to show that any pertinent witness currently resides in the Western District of Texas." Opp. Br. at 12. But that argument incorrectly suggests that, to warrant transfer, the moving party must name individual witnesses currently residing in the proposed transferee forum. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 258 (1981) (rejecting contention that defendants seeking transfer "must submit affidavits identifying the witnesses they would call and the testimony these witnesses would provide if the trial were held in the alternative forum"). To the contrary, this Court and others have readily transferred cases where the plaintiff's factual allegations themselves demonstrated that "the underlying events" occurred in another forum, such that, "[t]o the extent the parties require evidence or testimony from non-parties, they [would be] located [in that other forum]." *Wadhams v. Am. Federation of Teacher*, No. 19-cv-12098-LTS, 2020 WL 3129480, at *3 (D. Mass. June 12, 2020); *see also, e.g.*, *Avci v. Brennan*, 232 F. Supp. 3d 216, 219 (D. Mass. 2017) ("plaintiff's amended complaint in this case contains only allegations against USPS personnel in New York not in Massachusetts and thus the witnesses and documents are *presumably* located there" (emphasis added)). That commonsense conclusion likewise supports transfer here.[1]

In discussing whether convenience favors transfer, Plaintiffs again primarily emphasize that "*[a]ll* of the Plaintiffs reside in Massachusetts." Opp. Br. at 12 (emphasis in original). But, as this Court has made clear, "[t]ypically, it is not the convenience of the *parties*, but rather the

---

[1] Moreover, as described in Defendant's opening memorandum, there is a substantially similar FTCA case already pending in the Western District of Texas. And just recently, another similar matter was transferred from the Northern District of Illinois to the Western District of Texas. *D.A. et al. v. United States*, No. 20-cv-3082 (N.D. Ill.), Aug. 11, 2022, Transfer Order (ECF No. 85). Thus, in weighing the convenience of the parties and witnesses, "the proper inquiry is not whether Massachusetts is more convenient than [the Western District of Texas] in the abstract but instead whether sanctioning a second, nearly identical action here is more convenient than transferring the case for the purpose of consolidation." *Wiley v. Gerber Prod. Co.*, 667 F. Supp. 2d 171, 173 (D. Mass. 2009).

convenience of the *witnesses*, that is the most important factor in considering a motion to transfer venue." *ViaTech Techs., Inc. v. Adobe Inc.*, No. 19-cv-11177-ADB, 2020 WL 1235470, at *3 (D. Mass. Mar. 13, 2020) (emphasis added).  Plaintiffs also claim that "witnesses who can testify about the emotional harm caused by federal officials" live in Massachusetts.  Opp. Br. at 12.  But that assertion, even accepted as true, does not cut in favor of their preferred forum either, given that the viability of their emotional distress claims and availability of emotional distress damages would largely depend on the lawfulness of Defendant's actions outside of Massachusetts.  *See Mateo v. Univ. Sys. of New Hampshire*, No. 18-cv-11953-FDS, 2019 WL 199890, at *8 (D. Mass. Jan. 14, 2019) (granting transfer despite claims of emotional distress occurring in Massachusetts because "the emotional-distress claims [were], at best, derivative of the other claims").

*Fourth*, Plaintiffs' arguments regarding the public interest likewise miss the mark. Plaintiffs initially observe that, in addition to the Western District of Texas, "Massachusetts also has a substantial interest in this matter, as it 'has a substantive policy of protecting its citizens and providing a forum for redress of grievances.'"  Opp. Br. at 13 (quoting *Boateng v. Gen. Dynamics Corp.*, 460 F. Supp. 2d 270, 277 (D. Mass. 2006)).  But that general proposition would remain equally true in any case filed in this district by Massachusetts residents, and therefore does not account for the specific context of this action.  *Cf.* Wright & Miller, supra, § 3848 ("Plainly, context is important").  Considering the context of this action, Plaintiffs correctly acknowledge that the Western District of Texas has a strong "local interest" in a matter about immigration policies affecting the Texas border, the condition of government facilities located in Texas, and the legality of government conduct at the Texas border under Texas law.[2]  If those considerations do not favor

---

[2] Although Plaintiffs "dispute" that Texas law should apply, Opp. Br. at 13, they provide no reasoning or legal authority to support that assertion.  The primary conduct at issue in this case (and the resulting harm) allegedly occurred in Texas.  That remains true notwithstanding Plaintiffs'

transfer, it is difficult to see how another forum's specific local interest could *ever* outweigh Massachusetts' general policy of "protecting its citizens and providing a forum for redress."

Moreover, in evaluating the public interest, district courts "can and should consider" the potential for "consolidation" with a pending action in the proposed transferee forum. *Wiley v. Gerber Prod. Co.*, 667 F. Supp. 2d 171, 173 (D. Mass. 2009); *see also Johnson*, 2013 WL 1003432 ("the pendency of related litigation in the transferee forum weighs heavily in favor of transfer"). Thus, the fact that there are now two substantially similar FTCA cases already pending in the Western District of Texas weighs powerfully in favor of transfer. *See C.M., et al v. v. United States*, No. 21-cv-00234-JKP-ESC (W.D. Tex.); *D.A. et al. v. United* States, No. 20-cv-3082 (N.D. Ill.), Aug. 11, 2022, Transfer Order (ECF No. 85).  In opposition, Plaintiffs note merely that "there is no pending motion to consolidate" and that "Defendant fails to explain how other cases are similar enough to warrant consolidation." *Id.*  But, of course, it would not have made sense to file a motion to consolidate in the Western District of Texas unless and until this Court (or another) transferred a similar action there.  And Plaintiffs' suggestion that these cases might not prove similar enough is belied by their express recognition of other "family separation cases," *id.* at 11, and their attempt to bring a nationwide class action on behalf of individuals just like the plaintiffs

---

assertions that they continued to suffer emotional harm after relocating to Massachusetts, which is perhaps why Plaintiffs' opposition brief cites Texas caselaw first and foremost when discussing the merits of their claims.  Moreover, Plaintiffs' statement that this "action raises typical, common law tort claims," *id.*, contrasts sharply with the nature of their amended complaint, which seeks to apply unsettled tort law ranging far beyond garden-variety negligence (such as "tortious interference with the parent-child relationship") to uniquely federal-government conduct in the immigration context.  Thus, the fact that this Court has previously "appl[ied] the tort laws of other jurisdictions," *id.*, simply does not bear on whether the Western District of Texas remains better situated to apply Texas law to the circumstances of this case (including its implications for conduct at the Texas border).

in the cases that Defendant cites, *see* Am. Compl. ¶ 198.  Considering all these factors and the specific context of this case, this Court should transfer the matter to the Western District of Texas.

## II.  THIS COURT SHOULD DISMISS THE PLAINTIFF PARENTS' CLAIMS AS TIME BARRED.

Plaintiffs' opposition brief further confirms that this Court should dismiss the claims brought by the plaintiff parents (E.O., L.J., and F.C.) as untimely.  There is no dispute that, under the FTCA, a claimant must file an administrative claim within two years of his or her alleged injury.  28 U.S.C. § 2401(b).  And Plaintiffs concede that the plaintiff parents did not file administrative claims—on behalf of themselves—until more than two years after their alleged injuries.  Opp. Br. at 14.  To be sure, the three plaintiff children timely filed an Original Notice of administrative claims in October 2018, Exh. 8 (ECF No. 41-8), and a First Amended Notice in March 2020, Exh. 9 (ECF No. 41-9).  But these notices asserted claims, and sought damages, *only on behalf of the children*.  They did not identify the plaintiff *parents* as claimants or seek any damages on the parents' behalf.  It was not until July 2021 that Plaintiffs and their lawyers changed course and filed a "Second Amended Notice"—this time asserting claims not only on behalf of the three "Claimant children," but also on behalf of the three "Claimant parents."  Exh. 10 at 1 (ECF No. 41-10).  This Second Amended Notice thus asserted new claims on behalf of three new claimants and, for the first time, sought additional damages on the parents' behalf ($650,000 each). *See id.* at 12.

For their part, Plaintiffs acknowledge that an untimely administrative claim listing "new claimants" will not relate back to a timely filed administrative claim.  Opp. Br. at 15.  They argue, however, that the initial notices filed on behalf of the *children* also "identified claims on [the parents'] behalf," and that the Second Amended Notice did not "materially change" the earlier notices.  *Id.* at 14–15.  Respectfully, those assertions are incorrect and cannot be squared with the

7

notices themselves.  The Original Notice and First Amended Notice—attached as Exhibits 8 and 9 to the Amended Complaint—clearly show that Plaintiffs only asserted claims and sought damages on behalf of the three plaintiff children.  True, these notices both referenced and discussed the parents and their roles in the events giving rise to the children's claims.  But the mere fact that an individual has been referenced in—or is even crucial to—an administrative claim does not mean that the claim has been asserted on that individual's behalf.  In deciding whether an administrative claim adds "new claimants," courts have consistently drawn a critical distinction between (i) claims filed on behalf of others, usually family members, and (ii) claims filed on behalf of oneself—even where those claims relate to the same underlying incident.  *See, e.g.*, *Lee v. United States*, 980 F.2d 1337, 1338 (10th Cir. 1992).

Plaintiffs' repeated attempts to recast this issue as a "technocratic" and "hyper technical" argument, Opp. Br. at 14, overlooks the important differences between (i) filing claims and seeking damages only on behalf of one's children, and (ii) filing claims and seeking damages also on behalf of oneself years later.  As the First Circuit has explained, the FTCA's timely presentation requirement serves a "key" purpose in encouraging the prompt consideration of claims, allowing the government to efficiently investigate the full scope of the alleged wrongdoing and harm, and thereby make informed settlement decisions.  *See Holloway v. United States*, 845 F.3d 487, 489–90 (1st Cir. 2017).  The belated addition of three new claimants—each seeking additional, significant amounts of damages ($650,000 per parent)—undermines that purpose, and fundamentally alters the nature of the government's investigation and settlement calculus.  Because Plaintiffs' Second Amended Notice added new claimants (and sought a significantly different and increased amount of damages), this is plainly "not a case of exalting form over substance."  *Coska v. United States*, 114 F.3d 319, 323 (1st Cir. 1997).

The two cases that Plaintiffs cite do not alter the analysis.  In *McKenzie v. United States*, the district court considered information in an untimely administrative claim because it did not materially change the nature of the plaintiff's earlier filed (timely) claim.  No. 21-cv-00233-NT, 2022 WL 2073373 (D. Me. June 9, 2022).  In so doing, however, the district court emphasized that the belated claim did not "add new claimants or increase the damages claimed."  *Id.* at *5.  The district court expressly recognized that "attempting to add new claimants, claims, and/or damages outside the limitations period [would be] impermissible material changes."  *Id.* at *4; *see also id.* at *5 n.4 ("an amendment adding new claimants *would* clearly be time-barred").  That is precisely what happened here: The Second Amended Notice added three new claimants—each seeking to increase the amount of damages sought (specifically, by seeking $650,000 per parent).  In *Wooding v. United States*, the district court likewise distinguished between permissible amendments that merely "set[] forth additional facts," and impermissible amendments that seek to inject "new claimants."  No. 05-cv-1681, 2007 WL 2071674, at *3 (W.D. Pa. July 13, 2007).  And, in describing the latter (impermissible) category, the district court specifically highlighted situations in which individuals timely file claims on behalf of family members, and then belatedly attempt to file claims on behalf of themselves.  *See id.*

Finally, although district courts may equitably toll the FTCA's time bar when "exceptional circumstances" prevent a claimant from meeting that deadline, *Ortiz-Rivera v. United States*, 891 F.3d 20, 25 (1st Cir. 2018), doing so would not be appropriate here, where Plaintiffs were able to file timely claims on behalf of the minor children.  Plaintiffs understandably do not contend that it would have been difficult to list the parents as "claimants" on the Original Notice or First Amended Notice, or that they did not understand the legal significance of expressly identifying the "claimants" on an administrative claim.  Even then, an "inadvertent" omission would not suffice

for equitable tolling.  *Holloway*, 845 F.3d at 491.  Instead, Plaintiffs state that they are entitled to equitable tolling because (i) they experienced "emotional and mental trauma" as a result of the alleged conduct in this case, and (ii) they "feared reprisal" from the United States government if they pursued FTCA claims while simultaneously pursuing asylum.  Opp. Br. at 17.  This Court need not decide whether those considerations would satisfy the equitable-tolling standard as a general matter.  For purposes of this case, the critical point is just that the plaintiff parents *were* able to timely file administrative claims on behalf of their minor children—and have not identified any circumstances that would have prevented them from doing the same on behalf of themselves. Because the plaintiff parents have not alleged any facts indicating that extraordinary circumstances prevented them—*but not their children*—from timely filing administrative claims, Defendant respectfully suggests that this Court should decline to apply equitable tolling.

## III. THIS COURT SHOULD DISMISS PLAINTIFFS' CLAIMS FOR LACK OF SUBJECT MATTER JURISDICTION.

### A.  Plaintiffs' Claims Are Barred By the Discretionary Function Exception.

Plaintiffs advance four reasons why the DFE should not apply, but none of them has merit. *First*, Plaintiffs argue that "the DFE does not shield the United States from liability for unconstitutional conduct."  Opp. Br. at 22.  But the DFE is not made inapplicable by every allegation of unlawful or unconstitutional conduct, rather only by a showing that the government official's discretion was limited by a specific, clearly established directive, accompanied by plausible assertions that the specific directive was violated.  In *Butz v. Economou*, 438 U.S. 478 (1978), the Supreme Court recognized that immunity for discretionary acts would not be vitiated simply because alleged conduct might later be held unconstitutional.  *Id.* at 506–07 (acknowledging need to protect officials exercising discretion subject to "clearly established constitutional limits").  The Court in that case held that officials sued for violations of

constitutional rights were entitled to qualified, but not absolute immunity.  *Id.* at 507.  The Court explained that were it otherwise, as relevant to the case at bar, "no compensation would be available from the Government, for the Tort Claims Act prohibits recovery for injuries stemming from discretionary acts, even when that discretion has been abused."  *Id.* at 505.  *Butz* and subsequent decisions leave no doubt that conduct that violates the Constitution may constitute the type of abuse of discretion that falls within the scope of the DFE.  Otherwise, every plaintiff could easily and unilaterally sidestep the DFE merely by alleging that the defendant's conduct not only violated state tort law, but also violated the Constitution.  Yet this Court has never adopted a categorical rule that mere allegations of unconstitutional conduct necessarily render the DFE inapplicable as a matter of law, nor should it do so here.[3]

Plaintiffs' contrary position appears to rest on flawed reasoning—namely, that federal officials do not have discretion to violate the Constitution, and so conduct that violates the Constitution must fall outside of the DFE.  But, strictly speaking, federal officials do not have discretion "to violate" any law—not just the Constitution.  The relevant question for purposes of the DFE, therefore, is not whether the defendant had discretion to violate the law.  The relevant question is whether the defendant's conduct was "discretionary in nature" and "susceptible to policy analysis," *United States v. Gaubert*, 499 U.S. 315, 322 & 325, *whether or not* that conduct might later be found to have violated the law.  Indeed, the FTCA expressly states that the DFE can apply "*whether or not the discretion involved be abused*."  28 U.S.C. § 2680(a) (emphasis added).  And the Supreme Court and others have long recognized that conduct may be discretionary even

---

[3] Nor should this Court read the First Circuit's decision in *Limone v. United States*, 579 F.3d 79 (1st Cir. 2009), to have adopted such a categorical rule, either.  In that case, the First Circuit simply declined to apply the DFE to conduct that it had previously found "stated a *clear violation* of due process."  *Id.* at 102 (emphasis added).

if it is later determined to have violated the law (including the Constitution).  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Linder v. United States*, 937 F.3d 1087, 1091 (7th Cir. 2019) ("unless [the DFE] is to be drained of meaning, it must apply to discretionary acts that are tortious").  Accordingly, this Court should conclude that the DFE applies notwithstanding Plaintiffs' allegation that Defendant's conduct violated the Constitution.

*Second*, Plaintiffs argue that the DFE should not apply because Defendant's conduct allegedly violated "non-discretionary" duties imposed by (i) the *Flores* settlement; (ii) federal law governing the designation of migrant children as UACs; and (iii) CBP policies and a federal regulation.  But none of these allegedly "non-discretionary" duties prescribe a specific course of action for the government to follow when it comes to the conduct underlying Plaintiffs' claims— i.e., the decisions to refer the plaintiff parents for prosecution and detain them separately from the plaintiff children.  For example, the *Flores* settlement does not require the release of an adult parent held in custody, compel the release of a child to a parent that remains in custody, or mandate that parents be housed with their children while in immigration detention.  *See Flores v. Lynch*, 828 F.3d 898, 906, 908 (9th Cir. 2016).  And the government's decision to classify migrant children as unaccompanied minors for purposes of the Trafficking Victims Protection Reauthorization Act (TVPRA) plainly qualifies as a discretionary function—regardless of whether that classification was proper, or, as Plaintiffs argue, "improper."  Moreover, the October 2015 CBP policy regarding family unity that Plaintiffs cite—even if applicable during the relevant time period—merely sets forth a "General Standard" that does not prescribe any course of conduct when the government refers migrant parents for prosecution and subsequently detains them.

*Third*, Plaintiffs argue that, even if the government's conduct implicated discretion, its policy judgments nonetheless constituted "extreme misconduct" and "did not involve a weighing

of policy considerations of the kind that Congress intended to protect through the DFE." Opp. Br. at 27–28. In deciding whether the DFE applies, however, "[t]he focus of the inquiry is not on the [federal official's] *subjective intent* in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are *susceptible* to policy analysis." *Gaubert*, 499 U.S. at 325 (emphasis added). The DFE inquiry does not ask whether federal officials, "in fact," weighed or were motivated by the type of policy considerations that Congress intended to protect. *Hajdusek v. United States*, 895 F.3d 146, 150 (1st Cir. 2018). Instead, the inquiry asks "only whether the decision in question was of the type that policy analysis *could* inform." *Id.* (emphasis added). Relatedly, Plaintiffs contend that the DFE should not apply because the federal officials in this case allegedly "acted deliberately and with malice." Opp. Br. at 28. However, "courts must disregard analyses that rely on subjective intent to determine whether a discretionary choice is policy-driven." *Irving v. United States*, 162 F.3d 154, 168 (1st Cir. 1998). And again, the text of the DFE itself contemplates that it will insulate officials from liability even when they "abused" their "discretion" on matters of policy.

*Fourth*, Plaintiffs claim that the DFE should not apply to their claims insofar as those claims are based on the conduct of "line-level officers . . . acting pursuant to mandatory directives given by their superiors to carry out family separations." Opp. Br. at 29. However, the fact that discretionary functions are often ultimately implemented by "line-level officers" acting pursuant to directives from their superiors does not render the DFE inapplicable. For example, the decision to arrest and prosecute someone remains protected by the DFE even though "line-level officers" might effectuate the arrest and conduct the prosecution. A fair reading of the Amended Complaint makes clear that Plaintiffs' claims hinge on, and their alleged harms flow from, discretionary decisions regarding whether to refer the plaintiff parents for prosecution, whether to detain them

separately from the plaintiff children, whether to allow certain communication between them, and when and how to reunite them—not on the nature of the execution of those decisions.

**B. Plaintiffs' Claims Relating to the Decision to Detain Them Separately Are Barred by the FTCA's Exception for Actions Taken While Reasonably Executing Law.**

Plaintiffs' claims are also independently barred insofar as they rest on Defendant's decision to transfer the plaintiff children to the custody of ORR.  Relevant here, the FTCA "shall not apply to . . . [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation."  28 U.S.C. § 2680(a).  And, here, federal officials were plainly executing a statute—i.e., the TVPRA, 8 U.S.C. § 1232(b)(3)—in transferring the plaintiff children to the custody of ORR.  There is no dispute that this statute requires the government to "transfer the custody" of UACs to the care of ORR "not later than 72 hours after" determining that there is no parent available in the United States to provide them care and physical custody.  Thus, rather than dispute this requirement, Plaintiffs take issue with the antecedent question of whether the government properly classified the plaintiff children as unaccompanied minors.  However, that decision—interpreting a statute and deciding whether a parent is "available" to provide care and physical custody—is inherently a discretionary function.  And once that determination has been made, the TVPRA requires the government to transfer an unaccompanied minor to the custody of ORR.  Accordingly, Defendant's conduct in executing that statutory requirement falls squarely within the FTCA's exception for actions taken while reasonably executing the law.[4]

---

[4] Plaintiffs also briefly argue that federal officials "failed to exercise due care in carrying out [the TVPRA]" because they allegedly did not allow Plaintiffs an adequate amount of communication or provide them with enough information before transferring the plaintiff children, and then later subjected the parents and children to "abusive" conditions. Opp. Br. at 31.  The act of transferring UACs pursuant to the TVPRA does not, however, encompass conduct that occurs after this transfer.  And neither the TVPRA nor any other law requires that the government convey

### C. Plaintiffs' Claims Are Not Actionable Because They Are Systemic Tort Claims and Because There Is No Private Person Analogue.

Finally, Plaintiffs' claims are also independently barred because (i) the FTCA does not permit "systemic" tort claims against the United States government as a whole, and (ii) the challenged government conduct has no private-person analogue. The FTCA's waiver of sovereign immunity applies only to suits based on the "negligent or wrongful act or omission of any *employee* of the government while acting within the scope of his office or employment, under circumstances where the United States, if a *private person*, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1) (emphasis added). Yet the vast majority of allegations in the Amended Complaint refer not to the specific conduct of individual officials—but instead attack the past policies and conduct of the "United States government," "the U.S. government," and "the government." *See, e.g.*, Am. Compl. ¶¶ 1, 5, 23, 64, 69, 211–212, 217–220, 233–234, 237–240, 243–245. Moreover, Plaintiffs cannot reasonably dispute that the challenged actions in this case—the apprehension, detention, and treatment of migrant families illegally entering the United States—occupy a uniquely governmental sphere of authority and responsibility. *See Ryan v. U.S. Immigration & Customs Enf't*, 974 F.3d 9, 26 (1st Cir. 2020) ("Controlling immigration and the presence of noncitizens within the country are duties and powers vested exclusively in the sovereign.").

## IV. CONCLUSION

For the foregoing reasons, Defendant requests that this action be transferred to the Western District of Texas or, in the alternative, dismissed for lack of subject matter jurisdiction.

---

a certain minimum amount of information to parents of UACs prior to executing this transfer requirement, such that failing to do so would fall outside the FTCA's exception for actions taken while reasonably executing the law.

RESPECTFULLY SUBMITTED

RACHAEL S. ROLLINS
United States Attorney

Dated:  August 12, 2022                    By:        /s/ Rayford A. Farquhar
                                                      RAYFORD A. FARQUHAR
                                                      Assistant United States Attorney
                                                      U.S. Attorney's Office
                                                      1 Courthouse Way, Ste. 9200
                                                      Boston, MA 02210
                                                      (617) 748-3100
                                                      rayford.farquhar@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Rayford A. Farquhar
RAYFORD A. FARQUHAR
Assistant U.S. Attorney

Dated:  August 12, 2022